**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**DEBORAH K. SMITH**
Sugar Creek Law
Thorntown, Indiana

ATTORNEY FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**DAVID E. COREY**
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF C.W. & A.W. (MINOR CHILDREN)             )
)
)
)
and                                                         )
)
J.W. (MOTHER)                                               )
)
Appellant-Respondent,                                      )   No. 06A01-1406-JT-240
)
vs.                                        )
)
THE INDIANA DEPARTMENT OF CHILD SERVICES,                        )
)
Appellee-Petitioner.                                     )

FILED
Jan 20 2015, 9:17 am

CLERK
of the supreme court, court of appeals and tax court

APPEAL FROM THE BOONE CIRCUIT COURT
The Honorable J. Jeffrey Edens, Judge
The Honorable Sally E. Berish, Magistrate
Cause Nos. 06C01-1310-JT-295, 06C01-1310-JT-296

**January 20, 2015**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

J.W. ("Mother") appeals the trial court's decision granting the petition of the Boone County Department of Child Services ("DCS"), which sought to terminate Mother's parental rights as to C.W. and A.W. ("Children").

We affirm.

## Issues

Mother raises two issues for our review, which we restate as:

I.    Whether DCS violated her due process rights by failing to comply with procedural safeguards prescribed by Indiana statutes; and

II.   Whether DCS proved by clear and convincing evidence that there was no reasonable probability that the conditions that resulted in Children's removal from the home would be remedied.

## Facts and Procedural History

On September 14, 2005, A.W. was born to Mother and R.W. ("Father"). C.W. was born to Mother and Father on August 29, 2007.[1] During the ensuing years, Mother and Children became involved with DCS programs.

On July 2, 2012, staff at Witham Hospital in Lebanon contacted DCS to inform them that Mother was in the emergency room suffering from an apparent drug overdose

---

[1] Father's parental rights were also terminated; he does not appeal.

2

and displaying psychiatric symptoms. Mother's sister ("Sister") had taken Children into her care, and Mother went to live with Sister and Children.

On July 9, 2012, during a family vacation with Sister, Mother took Children and returned to Lebanon a day earlier than planned, purportedly so that Mother could seek employment. Concerned about Mother's decision, Sister contacted DCS. DCS workers went to Mother's location to check on Children, but Mother refused to allow DCS workers or Lebanon police officers inside. Due to concerns for Children's safety in a house with individuals unknown to DCS and not part of Mother's family, DCS removed the children from Mother's care.

Upon placement into foster care, Children displayed significant difficulties related to hyperactivity and emotional stress, and displayed extreme aggression toward one another. On November 5, 2012, Children were placed with a long-term foster family, and counseling services were put in place. Children improved significantly as a result of these services.

On January 18, 2013, the trial court found A.W. and C.W. to be Children in Need of Services ("CHINS").

Mother was known to have a history of substance abuse. Thus, DCS ordered Mother to participate in substance abuse counseling, drug testing, and provided Mother with supervised visitation with Children. Mother routinely missed drug testing appointments, and tested positive for use of various drugs during the CHINS proceedings; though she claimed to have prescriptions for these drugs, she never presented evidence of this. During August 2013, Mother further admitted to DCS workers that she had gone on a "four-day

3

binge" of heroin use. Mother never enrolled in drug treatment programs, even when DCS offered her inpatient and detoxification programs.

Mother's conduct during supervised visits was initially good, but over time her ability to parent the Children declined, and she fell asleep during a number of the supervised visits, resulting in Children fighting with one another until DCS or other workers intervened. Mother also fought openly with DCS and other service providers during some visits, her ability to provide effective redirection of the children declined over time, and Mother missed numerous visits. Mother also failed numerous drug tests, failed to appear for many DCS-ordered tests, and admitted to illegal drug use on several occasions.

On October 11, 2013, DCS filed its petition to terminate Mother's parental rights. In December 2013, mother pled guilty to and was convicted of Possession of Methamphetamine and Possession of Paraphernalia, and was sentenced to probation.

A termination hearing was conducted over the course of several sessions on January 23 and 24, 2014, and March 14, 2014.

On May 8, 2014, the trial court granted DCS's petition and terminated Mother's and Father's parental rights as to A.W. and C.W. This appeal ensued.

**Discussion and Decision**

Legal Standard

Mother appeals the termination of her parental rights. Our standard of review is highly deferential in such cases. In re K.S., 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). This Court will not set aside the trial court's judgment terminating a parent-child

4

relationship unless it is clearly erroneous. In re A.A.C., 682 N.E.2d 542, 544 (Ind. Ct. App. 1997). When reviewing the sufficiency of the evidence to support a judgment of involuntary termination of a parent-child relationship, we neither reweigh the evidence nor judge the credibility of the witnesses. Id. We consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. Id.

Parental rights are of a constitutional dimension, but the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents, but to protect their children. In re L.S., 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), trans. denied.

Indiana Code section 31-35-2-4(b)(2) sets out the elements that DCS must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:

(A) That one (1) of the following is true:

    (i)    The child has been removed from the parent for at least six (6) months under a dispositional decree.

    (ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a county office of family and children for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) That one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

If the court finds that the allegations in a petition described in Section 4 of this chapter are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a). A trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. In re

6

J.T., 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), trans. denied. The trial court also must "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." Id. Courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. A.F. v. Marion Cnty. Office of Family & Children, 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002), trans. denied.

### Due Process

Mother's first contention on appeal is that DCS did not comply with statutory procedures concerning the conduct of the CHINS proceedings, and specifically draws our attention to questions concerning the availability of DCS's case plans for Children and the timing of regular review hearings. DCS argues in response that Mother has waived these challenges by failing to raise them to the trial court and, waiver notwithstanding, 1) the absence of the case plans from the record does not mean that Mother never received those documents, and 2) Mother has failed to establish any prejudice from an annual review hearing held within two months of the statutorily-prescribed date.

It is well-settled that failure to raise due process claims before the trial court waives such claims when raised for the first time on appeal. McBride v. Monroe Cnty. Offices of Family & Children, 798 N.E.2d 185, 194 (Ind. Ct. App. 2003). Our review of the record reveals no objection from Mother that she was proceeding without case reports or other information into the hearings on termination of her parental rights. Thus, we agree with DCS that Mother's due process claims were waived.

Even when errors occur, however, we will not reverse the judgment of a trial court unless those errors prejudice the substantial rights of a party. Ind. Trial Rule 61. Assuming, without deciding, that DCS violated the statutory requirements for the provision of documents or the conduct of annual review hearings, Mother has failed to establish that any alleged errors prejudiced her substantial rights. Counsel for Mother actively cross-examined witnesses, challenged the admission of evidence, and at no point claimed to have been deprived of discovery or necessary documents. While the annual review hearing as to Children's status was conducted approximately two months after the removal of Children from the home, our review reveals no evidence that Mother opposed that timing. And on appeal, Mother identifies no prejudice she may have suffered as a result of these events, let alone a proceeding "'replete with procedural irregularities'" that would individually or in combination give rise to a due process violation. McBride, 798 N.E.2d at 195 (quoting A.P. v. Porter Cnty. Office of Family & Children, 734 N.E.2d 1107, 1118 (Ind. Ct. App. 2000), trans. denied).

We accordingly decline to reverse the judgment of the trial court on due process or statutory procedural grounds.

### Reasonable Probability of Remediation

We turn now to Mother's other issue on appeal, whether DCS established by clear and convincing evidence that there was no reasonable probability of remediation of the conditions that led to Children's removal from the home. The applicable statutory provision, Indiana Code subsection 31-35-2-4(b)(2)(B), is written in the disjunctive so that DCS need only have proved one of the following:

8

(i)     There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii)   The child has, on two (2) separate occasions, been adjudicated a child in need of services;

Thus, although Mother challenges the sufficiency of the evidence as to subsection 31-35-2-4(b)(2)(B)(i), we will affirm if there is sufficient evidence as to any one of these.

Here, there is sufficient evidence to establish a reasonable probability that the conditions resulting in Children's removal from Mother's home would not be remedied. See I.C. § 31-35-2-4(b)(2)(B)(i). Testimony from several social workers who supervised visitation with Mother and Children indicated that Mother's ability to effectively parent Children declined over the course of the CHINS proceedings. These declines included Mother's ability to discipline Children, so that Mother ultimately issued empty threats rather than effectively redirecting Children. Mother also displayed increasing difficulty remaining awake during visits with Children, including incidents in which Mother fell asleep standing up or did not hear Children's requests for help. These led to several incidents during which Children began to fight with one another and visits were terminated early, which led to Children becoming upset and engaging in aggressive behavior as a result

9

of the disruptions. Finally, Mother's use of both prescription and illegal drugs continued during the course of the CHINS proceedings, including Mother's admitted use of heroin. While Mother contends she was given few options for drug treatment, the testimony presented to the trial court indicated that Mother was extended several opportunities, including intensive inpatient drug treatment, but failed to follow through on such offers and admitted that she did not implement skills learned from life skills sessions she had previously attended.

This is sufficient evidence from which the trial court could conclude that there was a reasonable probability that the conditions that led to Children's removal from the home would not be remedied. We accordingly affirm the judgment of the trial court.

**Conclusion**

Mother failed to preserve for appeal any claim of error related to statutory procedures, and failed to establish any prejudice of her rights arising from any such alleged errors. There was sufficient evidence to establish the statutory elements required for termination of the parent-child relationship.

Affirmed.

ROBB, J., and BROWN, J., concur.